Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 480 | DATE | 3/28/2000 |
| CASE TITLE | Moriarty vs. Thompson-Kuenster. Funeral Home | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order denying defendant's motion for summary judgment. Defendant's motion for leave to amend its answer to add affirmative defenses and its motion to continue trial date are granted. Pretrial order to be filed by 4/28/00. Trial set for 4/24/00 is reset for 5/15/00 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAR 29 2000 date docketed | 38 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/28/2000 date mailed notice | |
| | MPJ courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

THOMAS J. MORIARTY, )
et al. )
)
Plaintiff )
)
v. ) No. 98 C 0480
)
THOMPSON-KUENSTER FUNERAL HOME, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Moriarty, as the trustee on behalf of the Teamsters Local Union No. 727 Pension and Health and Welfare Trusts (the "Funds"), brought this action to collect employer contributions from Thompson & Kuenster Funeral Home ("Thompson & Kuenster"), which he claims are due to the Funds pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act ("LMRA"). Thompson & Kuenster moves for summary judgment, which I deny for the reasons explained herein.

I.

Robert Kuenster, a licensed funeral director and embalmer, is the managing partner of Thompson & Kuenster funeral home, a business he purchased from John Thompson in 1979, then called

Thompson Funeral Home. The funeral home became a member of the Funeral Directors Services Association ("FDSA") in 1917 and remained a member until at least September 5, 1997. The FDSA is a multi-employer, membership organization that provides various services to its employer members including industry correspondence, reference guides, insurance programs, research projects, continuing education, legislative updates, group liability insurance, trust funds for clients of members, business administration assistance, social events, and lobbying. The FDSA also negotiates collective bargaining agreements with various funeral service workers' unions. Mr. Kuenster did not attend FDSA membership meetings or social outings. Teamsters Local Union No. 727, I.B.T., ("Local 727") and the FDSA have been parties to a series of collective bargaining agreements ("CBAs") since 1962. The Funds are third party beneficiaries of the CBAs between the Local 727 and the FDSA.

After being informed by Union business agents in October 1997, that Thompson & Kuenster had employees performing covered work, the Funds demanded that Thompson submit to an audit of its books and records to determine if it had made fringe benefit contributions to the Funds. Thompson objected, and Moriarty brought this action to obtain the audit and collect contributions, liquidated damages, interest and attorneys fees and costs; he claimed that Thompson-

Kuenster authorized the FDSA to bind it to the CBAs it negotiated with the Local, which in turn obligated it to contribute to these funds. After conducting the audit for the period of January 1, 1989 to December 31, 1997, the Funds claimed that Thompson owed the funds approximately $177,450. This case was filed before Judge Williams, since appointed to the Court of Appeals for the Seventh Circuit, who stayed the case pending a ruling on the appeals of three similar cases filed by the Funds in the Northern District. These cases having been decided in *Moriarty v. Glueckert Funeral Home, Ltd v. Hitzeman Funeral Home Ltd. v. Justen*, 202 F.3d 274, 2000 WL 32004 (7th Cir. 2000)("*Moriarty*"), I now take up this motion.

II.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999). When considering a motion for summary judgment, I review the entire record, drawing all reasonable inferences in the light most favorable to the non-moving party. *Cornfield by Lewis v. School Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir. 1993). The party

3

opposing the motion, however, must make a showing sufficient to establish any essential element for which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

III.

The Seventh Circuit has previously determined the appropriate standard to decide when an employer may be bound, through its involvement with a multi-employer association, to collective bargaining agreements negotiated between the association and a union: "'The test is whether the employer members of the group have indicated from the outset an unequivocal intention to be bound by group action in collective bargaining, and whether the union, being informed of the delegation of bargaining authority to the group, has assented and entered into negotiations with the group representative.'" *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 865 (7th Cir. 1998)("*Glueckert*"). This is a factual inquiry guided by a number of factors.

Here, the negotiation of collective bargaining agreements was not the sole or a principal activity in which the FDSA engaged, nor is there a "universally known and observed custom" that all FDSA members are bound by the association's collective bargaining agreements, such that membership in the FDSA constitutes an

4

unequivocal statement as to its actual authority to bind the new member. *Moriarty v. Hitzeman Funeral Home Ltd.*, No. 98 C 3563, 1999 WL 286077, *5 (N.D. Ill. 1999)("there is no dispute that negotiating CBAs is not the principal or sole activity of the FDSA")(internal citations omitted), *affirmed by Moriarty*, 202 F.3d 274 (7th Cir. 2000). This being the case, mere membership in the FDSA is not enough to bind its individual employer members to the CBAs it negotiated. *Gleuckert*, 155 F.3d 859, 866-867. I must therefore look to other factors to determine whether Thompson-Kuenster manifested an "unequivocal intention to be bound" by the CBA, including: (1) whether it participated in or closely monitored the collective bargaining process, (2) whether it pursued an individual course of action with respect to labor relations or employee benefit plans, (3) its conduct in adhering to, or ostensibly adhering to, the terms of the CBA (e.g. if an employer has contributed to a fund or has filed reports declaring that it has done so even if it has not), and (4) any other behavior with respect to the FDSA. *Glueckert*, 155 F.3d at 867-868.

Like the funeral homes in *Moriarty*, Thompson & Kuenster did not sign a CBA, expressly authorize the FDSA to bargain for it with the Union, vote to approve any of the CBAs presented to FDSA

5

members, attend any of the special meetings where CBAs were discussed and voted on, and was not involved in any aspect of the collective bargaining process. *Moriarty,* 2000 WL 32004, at *2. Thompson and Kuenster claims it also took similar affirmative actions as these parties, since it developed its own benefit plans for employees, and upon hearing that the trustee considered it "bound" to the CBAs, resigned as an FDSA member. *Id.* Mr. Kuenster also points to his and other deposition testimony which illuminates his intent not to be a party to the CBA.

However, unlike those funeral homes, the Funds allege that Thompson & Kuenster adhered to the terms of the CBAs, paid its employees in accordance with union scale, and made contributions to the Funds and/or to the Union. *Moriarty,* 2000 WL 32004, at *2. ("Not one of the three funeral homes adhered to the terms of the CBAs. Not one paid on the union scale. Not one contributed to the Funds or to the Union.") If the Funds offer more than bald assertions, these distinguishing factual characteristics may make all the difference in this fact-specific inquiry.

Mr. Thompson denies making contributions, paying union wages, or even knowing what union scale is. However, the Funds proffer evidence that Mr. William Fischer, a twenty-year employee of the funeral home, was paid union scale and contributions were made to

the union and/or the funds on his behalf. Mr. Fischer was hired as a driver by Mr. Thompson and kept on by Mr. Kuenster after he bought the funeral home. Mr. Thompson paid Mr. Fischer according to union scale and also paid his union dues. The Funds have pension credit ledger cards which show contributions received on behalf of Mr. Fischer from 1980 until February 1, 1984 -- four years after Mr. Kuenster purchased the funeral home. In addition, there is evidence, including an employer verification form signed by Mr. Kuenster verifying Mr. Fischer's employment, that Mr. Kuenster was aware of Mr. Fischer's union participation and claim with the Funds. Thompson & Kuenster admits that Mr. Thompson made contributions to the Funds on behalf of Mr. Fischer but denies that he or anyone at Thompsons & Kuentser, to his knowledge, continued to make contributions for Mr. Fischer after Mr. Kuenster took over the business. Instead, it surmises that Mr. Thompson may have paid for Mr. Fischer or that Mr. Fischer may have paid for himself. This may be true, or it may be that Thompson & Kuenster made the contributions. Whether Thompson & Kuenster adhered to the CBAs with respect to Mr. Fischer and other employees is material to the issue of whether Thompson & Kuenster demonstrated an unequivocal intent to be bound by the CBA negotiated by FDSA, a case-by-case, fact laden analysis. These questions of fact must be resolved at trial.

7

IV.

Thompson-Kuenster has also moved for summary judgment on the grounds of laches. "The equitable doctrine of laches is derived from the maxim that those who sleep on their rights, lose them." *Hot Wax v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999); see also *Lake Caryonah Improvement Ass'n v. Pulte Home Corp.*, 903 F.2d 505, 509 (7th Cir. 1990). To successfully assert laches to bar the Funds' claims, Thompson-Kuenster must demonstrate (1) an unreasonable and inexcusable lack of diligence by the Funds, and (2) that it suffered prejudice as a result. *Cannon v. University of Health Sciences*, 710 F.2d 351, 359 (7th Cir. 1983); *Hotwax*, 191 F.3d at 820.

Thompson & Kuenster argues that laches is appropriate because the Funds were aware of its operations due to Mr. Moriarty's position and physical location. Mr. Moriarty's office was only a few miles from the funeral home so he knew, or should have known, of employees who performed "covered work" as early as 1980. In addition, Thompson & Kuenster claims that a 1980 event proves that the Funds knew it did not operate under the terms of the CBA. Mr. Kuenster allegedly fired an employee, James Trolia, because he

8

joined the Union while employed by Thompson & Kuenster.[1] A grievance was filed by the Union on Mr. Trolia's behalf, of which Mr. Moriarty -- who was then the Trustee of Local 727 and the Executive Director of the FDSA -- was aware, says Mr. Kuenster. Nevertheless, during the ensuing seventeen years, the Funds never requested contributions nor did they ever attempt to determine whether Thompson & Kuenster was indeed making any contributions.

The Funds respond that they took immediate action, by requesting an audit, upon learning in late 1997 from union business agents that Thompson & Kuenster had employees performing covered work. In this regard, the Funds are only seeking to recover contributions from the periods beginning in 1988, so they are within the ten-year limitations period. With respect to any implied knowledge due to the Mr. Trolia's grievance, the Funds allege that Thompson & Kuenster was paying contributions for Mr. Fischer at the time the grievance was filed and continued to pay on his behalf for four more years until he retired, so they did not know that

---

[1] Firing an employee for his union membership is an unfair labor practice. 29 U.S.C.A. § 158(a)(3). *NLRB v. Q-1 Motor Express, Inc.* (7th Cir. 1994)(An employer who fires an employee for having engaged in union activities commits an unfair labor practice). The defendant should keep in mind that equitable relief is discretionary and may be defeated by bad acts of those who seek refuge in a court of equity. See e.g. *Sample, Pickins, and Scott v. Barnes*, 55 U.S. 70, 74 (1852).

9

Thompson & Kuenster was not fulfilling its obligation under the CBA. Finally, the Funds argue that neither they nor the Union have the resources to actively police employer contributions but instead rely primarily upon voluntary compliance from FDSA members for payments pursuant to the CBA.[2]

Although laches may be available even when the statute of limitations has not yet run, where a defendant can show harm as a result of delay in bringing suit, Thompson & Kuenster claims Mr. Moriarty knew it did not contribute, and he denies such knowledge. Therefore, this is not an appropriate issue for summary judgment because, at this time, Thompson & Kuenster has not proven an unreasonable lack of diligence and thus established its entitlement to laches as a matter of law. *See Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 181 n. 5 (7th Cir. 1994) ("Laches is an affirmative defense which is required to be proved by the party raising it").

---

[2] The Union, which contracts with hundreds of employers in various industries, has only four agents to cover about 900 employer locations in the Chicago area; these agents have many other duties in addition to notifying the funds that an employer is using employees who are performing covered work.

Thompson-Kuenster's motion for summary judgment is therefore DENIED.

ENTER ORDER:

*[signature]*

**Elaine E. Bucklo**
United States District Judge

Dated:   March 28, 2000

Copies are being mailed to:

Sherrie E. Voyles
Jacobs Burns Orlove Stanton & Hernandez
300 W. Washington Street, #1200
Chicago, IL  60606

Attorney for Plaintiff


Janet L. Adams
James J. Roche & Assoc.
642 N. Dearborn
Chicago, IL  60610

Attorney for Defendant